# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5836 | **DATE** | 1/25/2001 |
| **CASE TITLE** | HAENISCH vs. GENERAL MOTORS CORPORATION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (72-1) for summary judgment is granted. Motion (61-1) for class certification is denied.**
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 31 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 76 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 JAN 30 PM 3:27 | | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS<br>TYPE III DOOR LATCH LITIGATION<br><br>THOMAS J. HAENISCH,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS CORPORATION,<br><br>Defendant. | No. 98 C 5836<br>MDL Docket No. 1266<br><br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

DOCKETED
JAN 3 1 2001

Before me are defendant General Motors (GM) Corporations' motions for summary judgment on the two remaining cases in the Type III Door Latch Litigation: *Haenisch v. General Motors* and *Rangel v. General Motors*. The central allegation of these putative class actions is that GM breached express and implied warranties by using door latches which were prone to open during collisions and committed fraud by not telling its customers about the defective latches. Plaintiffs point out that the consequences of a defective door latch in a collision can be quite serious. An open door compromises the structural integrity of the passenger compartment, permitting increased likelihood that passengers will be crushed, entrapped, or ejected. In the case at hand, however, plaintiffs seek to represent only those consumers who have suffered no injury as a result of the defective latches, beyond economic damage in the amount of the cost of repair of the latches and/or diminished market value of the vehicle.

1

76

GM's motions to dismiss have limited the issues to be considered on summary judgment. Remaining in the *Haenisch* case are plaintiff's Illinois state law and common law fraud claims. Still before me in the *Rangel* case are state law claims for breach of express and implied warranty as well as a claim of false, misleading, and deceptive trade practices, all brought under the auspices of the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Com. Code §§ 17.41-17.63.

## I. Facts

Plaintiff Thomas Haenisch seeks to represent a class of all Illinois residents who own a General Motors vehicle equipped with an unmodified Type III door latch. Haenisch purchased a new 1985 Cadillac DeVille sedan from Patrick Cadillac in Schaumburg, Illinois in 1986. Plaintiff's car is fifteen years old and has over 115,000 miles on it. Over fifteen years, plaintiff testified that he has found his vehicle to be "dependable," "reliable," and a means of "safe transportation." The door latches have always functioned properly, and have never inadvertently unlatched. Plaintiff has not spent any money repairing or replacing the door latches on his Cadillac.

Alma Rosa Rangel, Eduardo Cervantes, and Thelma Rodriguez seek to represent a class of all Texas residents who own a General Motors vehicle equipped with an unmodified Type III door latch. Plaintiffs' vehicles are between fourteen and twenty years old. Alma Rosa Rangel and Eduardo Cervantes have been involved in accidents in which their doors have popped open, but neither were injured.

Both the Texas and Illinois plaintiffs allege that GM had reports from 1977 through 1985 of doors opening in crashes, and that it knew that the failure of its Type III latches was the cause.

GM learned of problems with the latches from letters and reports, many of which plaintiffs have included in the record. Some of these papers report specific incidents, others discuss the reasons for and means to prevent latch failure, and one reports the filing of 84 personal injury lawsuits alleging latch failure. By 1982, GM concluded that the latch could fail up to 18,000 times per year. It waited until 1989 to destroy its entire inventory of Type III latches–at a cost of $1.35 million. GM never notified its customers of the potential hazard posed by the defective latches, nor did it issue a recall, which would have cost it an estimated $900 million.

## II.     Whether the Latches Are Defective

The parties each offer affidavits and declarations from a small army of statisticians and engineers who are prepared to present opposing theories as to whether the Type III door latch is or is not defective. GM's strongest argument is, of course, that the door latches have already been the subject of a defect investigation performed by the National Highway Traffic Safety Administration (NHTSA) – an investigation which concluded that the latches were not unduly dangerous.

Plaintiffs have convinced me that the NHTSA report should not dispose of plaintiff's defect claim. There remains a question of fact about whether the NHTSA collected data which would show how often "bypass failure" – the particular defect at issue in this case – occurs in real world accidents. In addition, plaintiffs' experts say that they have tested the latch and discovered that it incurred bypass failure much more frequently and under a much lighter compressive load than other manufacturers' door latches.

A reasonable jury could find either side's experts credible. Plaintiffs have at least raised a question for the jury. Having said that, I reiterate my original concern about this case which is

that plaintiffs are really complaining that the latches are not infallible. Approximately 40 million vehicles are equipped with unmodified Type III latches, and the number of test crashes and real world accidents allegedly attributable to the latches is (even accepting plaintiffs' account) relatively small. A crucial factor to be weighed here is the rate at which other manufacturers' door latches are susceptible to bypass failure. Plaintiffs have devoted too little attention to this question up to this point.

Plaintiffs could no doubt prove that the latch is not faultless. But the rate at which the defect occurs matters in a case in which plaintiffs seek the cost of repair for millions of vehicles which have never malfunctioned.

### III. The Damages Issue

Although the Texas and Illinois plaintiffs proceed under different legal theories, all plaintiffs have this in common: they must show that GM's conduct caused them to suffer compensable injuries. GM argues that plaintiffs–none of whom have been physically injured or spent money to fix a defective door latch–have offered no evidence of injury. Because I find that the damages issue is dispositive of all of plaintiffs' claims, I deal only with that issue for the remainder of this opinion. The weight of authority in Illinois, Texas and other jurisdictions supports my finding that plaintiffs cannot prove an essential element of their case.

 A. Illinois Law

A valid claim under the Illinois Consumer Fraud Act (and under a theory of common law fraud) must show that the fraud proximately caused an injury to the plaintiff. See *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996). "Injury is the legal invasion of a legal right; damage is the loss, hurt or harm which results from the injury; and damages are the recompense

4

or compensation awarded for the damage suffered." *Giammanco v. Giammanco*, 625 N.E.2d 990 (Ill. App. Ct. 1993).

The Illinois Supreme Court has never decided whether an uninjured plaintiff can recover damages to fix an allegedly defective product which has yet to malfunction. As a general rule, the Illinois Appellate Court has allowed product defect claims in the absence of product malfunction only when the damages claim stems from the diminished value of the defective product. For example, in *Perona v. Volkswagen of America, Inc.*, 684 N.E.2d 859 (Ill. App. Ct. 1997), the court held that plaintiffs whose automobiles never exhibited unintended acceleration suffered a compensable injury because widespread knowledge of the defect in the market led to lost resale value. See also *Schiffner v. Motorola, Inc.*, 697 N.E.2d 868, 874-75 (Ill. App. Ct. 1998)(complaint alleging failure to disclose health risks associated with the use of cellular telephones sufficiently alleged a compensable injury based on diminished value of the product, even where no injury had yet ensued). *Cf. Kelly v. Sears Roebuck and Co.*, 720 N.E.2d 683 (Ill. App. Ct. 1999)(while Illinois courts have generally allowed damages claims based on diminished value of a product which has not yet malfunctioned, uninjured plaintiff must allege more than a possibility that his product is defective).

The case at hand differs from *Schiffner*, a case involving defective cellular telephones which allegedly emitted harmful radio signals during each and every use; here, the allegation is that *if* plaintiff is in an accident, the door *might* come open, and *if* the door opens, there is a stronger likelihood that plaintiff *might* be injured. Neither can Mr. Haenisch rely on *Perona* since he offers no evidence of lost resale value.

5

Moreover, *Perona*, *Schiffner* and *Kelly* were all decisions rendered on defendants' motion to dismiss, not summary judgment as is the case here. At this stage, Mr. Haenisch cannot rest upon allegations that he has suffered an injury; he must show me what that injury is. In addition to the absence of evidence of diminished value, plaintiff has not spent any money to repair the allegedly defective door latches. In fact, he never even contacted GM to inquire about the latches or to ask for replacements. In short, he has not been injured in any way.

B. Texas Law

Courts interpreting Texas law have generally opposed the idea that consumers should be able to recover damages for an allegedly defective product which has not yet malfunctioned or caused injury. See *Coghlan v. Aquasport Marine Corp.*, 73 F. Supp.2d 769, 772 (S.D. Tex. 1999)(purchaser of a boat which contained allegedly defective fiberglass coated wood was not entitled to recover absent showing that the defect caused injury); *Martin v. Ford Motor Co.*, 914 F. Supp. 1449 (S.D. Tex. 1996)(buyers of cars with defective seatbelts who suffered no injury were not entitled to recover).

Two courts which allowed uninjured plaintiffs to proceed with product liability claims have specifically distinguished cases in which owners of automobiles sued for defects which never materialized. See *Rivera v. Wyeth Ayerst Laboratories*, 121 F. Supp.2d 614 (S.D. Tex. 2000)(uninjured plaintiffs allowed to proceed in a suit against seller of defective drugs); *Microsoft Corp. v. Manning*, 914 S.W.2d 602 (Tex. App. 1995)(distinguishing uninjured buyers of computer software from uninjured buyers of cars and tires). In *Microsoft*, the Texas Court of Appeals wrote:

> "Software ... is not like tires or cars. Tires and cars have a distinctly limited usable life. At the end of the product's life, the product and whatever defect it may have had passed away. If a defect does not manifest itself in that time span, the buyer has gotten what he bargained for." 914 S.W.2d at 609.

The Texas court's observation is particularly apt on the facts of this case. The automobiles owned by Alma Rosa Rangel, Eduardo Cervantes, and Thelma Rodriguez are seventeen, twenty, and fourteen years old respectively. Rangel and Cervantes have been involved in accidents in which their doors have popped open, but they were not injured. Rodriguez has difficulty with the latch on her door, but it has never opened inadvertently.

Judge Kazen's decision to let the *Rangel* plaintiffs proceed past a motion to dismiss does not bind me for purposes of summary judgment. His thorough analysis of the injury issue under Texas law dealt exclusively with cases at the pleadings stage, and he did not consider whether the *Rangel* plaintiffs had produced evidence to support their allegations of injury.

The one case plaintiffs cite in support of their damages argument is *Garcia v. GM*, Civil Action No. B-98-155 (S.D. Tex. September 28, 2000). In that case, as here, no plaintiff was injured, and the only damage sought was the cost of repairing the defective component. Judge Tagel nonetheless allowed the suit to proceed past a motion to dismiss, finding that Texas law did not definitively require plaintiffs to allege either a malfunction or physical injuries. Notwithstanding this decision, I join the majority of courts which have held that a plaintiff's product must malfunction or cause him some specific injury before he can sue for the cost of repair. Plaintiffs cite no case in which an uninjured owner of a product which has never manifested its alleged defect has survived summary judgment.

C.     Other Jurisdictions

The great weight of authority from other jurisdictions suggests that a defect must manifest itself in plaintiff's vehicle before plaintiff can recover. The Eighth Circuit addressed the issue before me in *Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir. 1999). In that case, plaintiffs alleged that a defect in brake design caused them to overpay for their cars and would lead to decreased resale value. The court dismissed the case because "plaintiffs affirmatively state that their purported class excludes any claim for personal injury or property damage caused by brake failure." 172 F.3d at 630.

See also: *In re Air Bag Prod. Liab. Litig.*, 7 F. Supp.2d 792, 803 (E.D.La. 1998)(holding that plaintiffs failed to allege that a single air bag functioned improperly, which is a prerequisite for recovery); *Lee v. General Motors Corp.*, 950 F.Supp. 170, 171-74 (S.D.Miss.1996) (dismissing plaintiffs' claims of inherently defective detachable fiberglass roofs for failure to plead damages); *Pfizer v. Farsian*, 682 So.2d 405, 407 (Ala.1996) (holding that a plaintiff's belief that a product could fail in the future is not, without more, a legal injury sufficient to support plaintiff's claim); *Yost v. General Motors Corp.*, 651 F.Supp. 656, 657-58 (D.N.J.1986) (holding that complaint alleging that engine design defect was "likely to cause" damage failed to state a claim); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595, 603 (S.D.N.Y.1982) (holding that the purchaser of defective tires which did not malfunction had no claim for breach of implied warranty).

The above case law does not necessarily compel a blanket rule according to which no purchaser of a vehicle may recover damages absent personal injury. I can envision a case, for example, in which a plaintiff should be allowed to recover damages in anticipation of a defect

which is sure (or extremely likely) to manifest itself at a future date. A person who can show evidence of diminished resale value may also be able to show injury even in the absence of a manifested defect. It may even be that an uninjured plaintiff complaining of a defective door latch could suffer a legal injury on certain facts – say if the vehicle were relatively new, there was evidence to suggest that latch failure occurred with some frequency, or evidence to suggest that widespread knowledge of the defect decreased its market value. Even on these facts, one would have to go out on a legal limb to find injury. The facts of the case at hand do not warrant a departure from our traditional understanding of what a legal injury is.

Here, plaintiffs have alleged only a possibility of malfunction leading to a possibility of injury – indeed, one which has occurred to a very small percent of persons who bought the automobiles in question.[1] Moreover, the *youngest* of plaintiff's vehicles is nearing fifteen years old. I cannot help but surmise that the reason plaintiffs have not offered evidence of diminished resale value is because, for many of plaintiffs' vehicles, the resale value is nil with or without the door latches issue. As a matter of policy, I do not see much point in ordering the cost of repair for millions of uninjured plaintiffs who own fourteen to twenty-year old automobiles which have never malfunctioned and (even accepting plaintiffs' allegations of defect) most likely never will.

---

[1] Incidentally, I do not give conclusive weight to Mr. Haenisch's deposition testimony in reaching my decision on the damages question. When asked what damages he suffered because of the door latches, Mr. Haenisch answered: "What do you mean by damages?" He subsequently answered: "Not to my knowledge." I cannot accept GM's assertion that plaintiff threw away his case with this comment. Plaintiff is not a legal expert and should not be expected to opine on the issue of what constitutes legal damages.

## IV. Conclusion

Plaintiffs have charged GM with making a calculation that it was cheaper to "pay off" those who were injured or killed by its defective latches than to order an expensive recall to prevent further injuries and loss of life. It is possible that GM did make this calculation. If it did, then GM is susceptible to the criticism that its failure to alert consumers to the danger it caused was unethical and showed disregard for the value of human life. But even such a profit-motivated calculation would not give every consumer who received an unmodified Type III latch the right to sue. Plaintiffs must show that they have been injured by GM's actions. Despite over two years of discovery, they have been unable to do so.

GM's motions for summary judgment in the *Haenisch* and the *Rangel* case are granted. The Rangel plaintiffs' motion to amend their complaint is denied as moot. Mr. Haenisch's motion for class certification is also denied on the grounds that he has no claim and cannot represent any class of claimants. The jurisdictional issue (raised by neither party) but presented to counsel for consideration by the court, is withdrawn by the court.

ENTER:

James B. Zagel
United States District Judge

DATE: 25 Jan 2001